UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENGO COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY CARPENTERS FUND &<br>NORTHEAST REGIONAL COUNCIL OF<br>CARPENTERS,<br><br>Defendants. | Civil Action No. 13-5252 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendants New Jersey Carpenter Funds (the "Funds") and Northeast Regional Council of Carpenters (the "Union") (collectively "Defendants")'s motion to dismiss Plaintiff Engo Company ("Plaintiff" or "Engo")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Court has considered the submissions made in support of, and in opposition to, Defendants' motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is granted. Engo's complaint is dismissed in its entirety without prejudice to Engo's right to seek relief from this Court when and if it ultimately establishes federal subject matter jurisdiction.

---

[1] Although Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will construe Defendants' motion as one to dismiss for lack of ripeness and for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

1

## I. BACKGROUND[2]

This action stems from Engo's allegations that, pursuant to a Collective Bargaining Agreement ("CBA") between it and the Union, it is not obligated to make contributions to employee welfare and pension funds on behalf of certain of its employees.

### A. The Parties

Engo is a New Jersey Company which manufactures display cases and shelves. (*See* Compl. at ¶ 6.) The Funds are multi-employer pension and welfare trust funds. (*See id.* at ¶ 7.) The Union represented Engo's employees in negotiating the terms of various Collective Bargaining Agreements ("CBAs") into which Engo and the Union entered, which required Engo to make contributions to the Funds on behalf of union employees. (*See id.* at ¶¶ 9-10.)

### B. The Parties' Obligations under the CBA

Engo and the Union signed the most recent and final Collective Bargaining Agreement (the "CBA") on June 12, 2007. (CBA at 11.) That CBA was effective from June 1, 2007 through May 31, 2010. (CBA at ¶ 1-1.) The CBA required Engo to "pay monthly to the New Jersey Carpenters Welfare [and] Pension Fund[s] . . . for each Union employee, for all hours worked . . ." (CBA at ¶¶ 5-1; 6-1.)

The dispute resolution provision of the CBA provides that:

> [a]ll disputes or complaints of whether character [sic] if not adjusted by the subordinates involved, shall be referred to the New Jersey Regional Council of Carpenters, Executive Secretary Treasurer (EST) or his designee and the Employer or his direct representative for settlement. . . . If the parties are unable to agree on any settlement, the dispute *shall be*

---

[2] The Court sets forth only those facts it deems relevant to deciding the instant motion to dismiss. These facts are taken from the complaint, the briefs, and the exhibits attached to submissions in support of, and in opposition to, Defendants' motion. As the Court construes Defendants' motion as one challenging the factual basis of this Court's subject matter jurisdiction, it is appropriate for this Court to look beyond the allegations in the complaint in deciding the instant motion without converting it into one for summary judgment. *See, e.g., Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2000).

2

> *arbitrated equitably and accordingly to the alternative dispute resolution process established in the Collective Bargaining Agreement (CBA) between the New Jersey Regional [sic] of Carpenters and the Building Contractors Association of New Jersey.*

(CBA at Art. XIII) (emphasis added.)

The CBA between the New Jersey Regional Council of Carpenters and the Building Contractors Association of New Jersey (hereinafter the "BCANJ Agreement"), which is incorporated by reference in Article XIII of the CBA, sets forth two separate alternative dispute resolution mechanisms at Article XVIII and Article XXVI. The relevant text of Articles XVIII and XXVI, respectively, is set forth below:

> All questions or grievances involving the interpretation and application of this [BCANJ] Agreement, other than trade jurisdictional disputes . . . shall be handled under the following procedures:
>
> . . . If the parties are unable to affect an amicable settlement or adjustment of any grievance or controversy, such grievance or controversy shall be submitted to binding arbitration under the Expedited Rules of the American Arbitration Association at the request of either party providing notice in writing of the intent to do so is given through the other party and the American Arbitration Association . . . One of the following three Arbitrators (J.J. Pierson, Wellington Davis or Steven M. Wolf) shall be selected who [sic] shall hear the matter and his decision will be final and binding on the contract to the Union and all Employers.

(BCANJ Agreement Art. XVIII.)

> [T]he Trustees of any Fringe Benefit Fund or an alleged delinquent employer may request arbitration of any alleged wage or fringe benefit fund delinquencies and arbitration must be heard within thirty (30) days after such request. The decision of the arbitrator shall be final and binding. The arbitration shall be heard in offices of the applicable Carpenter Funds or in the office of the counsel for the Funds and shall be in accordance with the rules of the New Jersey State Board of Mediation. In order to expedite such hearing, a Permanent Arbitrator is herewith designated and approved. Said Permanent Arbitrator is J.J. Pierson. The Permanent Arbitrator shall serve for a period of one year and shall be subsequently reappointed yearly thereafter upon affirmative vote of the Fund Trustees.

3

(BCANJ Agreement at Art. XXVI, ¶ 4.)

### C. The Parties' Substantive Dispute

#### a. Audit of Engo's Books and Records

In 2011, the Trustees of the Funds engaged an auditor to examine Engo's books and records for the period of 2008 to 2010. (*See* Engo. Cert. at ¶ 11.) After completing the audit, the Funds' auditor reported a deficiency of $504,303.63. (*See* Parsons Ex. E.) Engo alleges that this alleged deficiency arises from its failure to make contributions on behalf of those employees who had not yet been accepted into the Union and its failure to pay its employees the "commercial rate" for time spent in travel status. (Compl. at ¶¶ 14-15.) According to Engo, it has no obligation under the CBA either to make contributions to the Funds on behalf of non-union employees or "to contribute to the Funds based on the 'commercial rate' of travel time." (*See, e.g.*, Compl. at ¶ 2.)

#### b. The Arbitration

Over Engo's objections, the Funds requested to arbitrate Engo's audit delinquency before Arbitrator J.J. Pierson pursuant to Article XIII of the CBA and Article XXVI of the BCANJ Agreement. (*See id.* at ¶ 16.) Engo, however, refused to submit to arbitration before Arbitrator Pierson, and instead filed for arbitration before Arbitrator Wellington Davis pursuant to Article XIII of the CBA and Article XVII of the BCANJ Agreement. (*See* Parsons Ex. F; *see also* Compl. at ¶ 17.) In filing for arbitration before Arbitrator Davis, Engo "sought a declaration that, based on the language of the . . . [CBA] . . . and past practice . . . [Engo] was not obligated to contribute to the Funds as claimed by the auditor and Fund' counsel." (Def. Oppn. Br. at 8.)

4

The Funds declined to arbitrate before Arbitrator Davis who, at the Funds' request, ultimately declined jurisdiction in deference to Arbitrator Pierson. (*See* Compl. at ¶ 18; Def. Br. at 7.) Arbitrator Pierson then rescheduled a hearing for December 29, 2011. (Nelligan Cert., Ex. D.) Subsequently, on or about December 21, 2011, Engo requested that Arbitrator Pierson postpone the scheduled hearing to permit Arbitrator Davis to resolve the contract dispute between Engo and the Union. (*Id.*) Arbitrator Pierson allegedly did not respond to Engo's request. (Def. Oppn. Br. at 8.)

On December 23, 2011, Engo sent a letter to Arbitrator Pierson requesting that he recuse himself, citing various alleged conflicts of interest. (Nelligan Cert., Ex. E.) This request was denied. (Def. Oppn. Br. at 8.) On or about December 27, 2011, Engo filed an action in New Jersey Superior Court seeking to disqualify Arbitrator Pierson. (Def. Oppn.at 8; *see also* Civ. No. 11-7544, CM/ECF No. 1.) A day later, the Funds and the Union removed Engo's action to federal court; the matter was assigned to the Honorable William J. Martini. (Civ. No. 11-7544, CM/ECF No. 1.)

In the meantime, Arbitrator Pierson proceeded with the scheduled hearing on December 29, 2011. (*See, e.g.*, Def. Oppn. Br. at 8.) By letter dated December 29, 2011, Engo advised Arbitrator Pierson that it would not attend the hearing. (*See* Nelligan Cert., Ex. F.) As Engo was not represented at the hearing, Arbitrator Pierson refused to allow the court reporter sent at Engo's request to transcribe the proceeding. (Parsons Cert., Ex. G.)

c. The Arbitration Award

On January 23, 2012, Arbitrator Pierson issued a sixteen-page Award in which he concluded that Engo had an obligation to pay a total of $792,599.66, which included the

amount of the alleged delinquency found in the audit in addition to interest, liquidated damages, attorneys' fees, and arbitrator's fees. (*See* Parsons Cert., Ex. G.).

        d.    <u>Vacatur of the Award</u>

On February 27, 2012, Engo filed an action in New Jersey Superior Court requesting that the court both vacate Arbitrator Pierson's Award and enter an order disqualifying Arbitrator Pierson for alleged bias. (Parsons Cert. at ¶ 20.) On May 23, 2012, Assignment Judge Travis Francis vacated Arbitrator Pierson's Award upon determining that Arbitrator Pierson should have adjourned the hearing while Engo's action seeking to disqualify him was pending in federal court.[3] (*See generally* Nelligan Cert., Ex. G.) Judge Francis, however, refused to disqualify Arbitrator Pierson as an arbitrator in future matters. (*Id.*)

        e.    <u>Resubmission of the Fund's Claim</u>

By letter dated May 30, 2012, the Funds once again noticed Engo for arbitration before Arbitrator Pierson. (Parson Cert. at ¶ 21.) Engo subsequently sent a letter to Arbitrator Pierson requesting that he recuse himself, a request which was denied. (*See id.*) Accordingly, on June 21, 2012, Engo filed an application to disqualify Arbitrator Pierson in New Jersey Superior Court. (*Id.* at ¶ 22.) Judge Francis denied Engo's application on August 24, 2012. (Parson Cert. at ¶ 23.)

Engo then appealed Judge Francis's decision of August 24, 2012 to the Appellate Division, where the matter is still pending. (*See, e.g.*, Def. Oppn. Br. at 11.) At Engo's request, Judge Francis stayed his order denying Engo's application to disqualify Arbitrator Pierson on October 17, 2012. (*See, e.g.*, Def. Oppn. Br. at 11.)

---

[3] Approximately one month after Arbitrator Pierson entered the Award against Engo, Judge Martini entered a consent order remanding the federal court matter to the New Jersey Superior Court. (Civ. No. 11-7544, CM/ECF No. 13.)

D.  The Second Audit

The Funds are in the process of conducting another audit of Engo's books and records for the period of January 1, 2011 through July 9, 2012. (Compl. at ¶ 20.) That audit has not yet been completed. (Def. Oppn. Br. at 11.)

E.  Engo's Complaint before this Court

On August 30, 2013, Engo filed a three-count complaint in this Court seeking declaratory judgment that: (1) Engo is not obligated to contribute to the Funds on behalf of non-union employees (Count I); (2) Engo is not obligated to contribute to the Funds based on the commercial rate for time employees spent in travel (Count II); and (3) the Funds and the Union are equitably estopped from asserting claims for contributions on behalf of non-union employees and for travel time paid at the commercial rate. Engo invokes this Court's jurisdiction pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (*See* Compl. at ¶¶ 1-5.)[4]

Defendants moved to dismiss Engo's complaint on October 21, 2013. After Engo and Defendants submitted their opposition and reply papers, respectively, the Court entered an order requiring the parties to file supplemental briefs addressing whether this Court should abstain from adjudicating Engo's declaratory judgment action pursuant to any federal abstention doctrine. Defendants' supplemental brief was filed on December 27, 2013, and Engo's on January 7, 2014.

II.  **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction, and thus may adjudicate cases and

---

[4] Engo also invokes this Court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. It bears mentioning, however, that the Declaratory Judgment Act is not an independent basis of federal subject matter jurisdiction. *See Mack Trucks, Inc. v. Int'l Union, UAAIW*, 856 F.2d 579, 583 n.4 ("Although [the Declaratory Judgment Act] enlarges the range of remedies available in federal courts, it does not create subject matter jurisdiction.").

7

controversies only as permitted under Article III of the Constitution. U.S. Const. art. III, § 2. Irrespective of whether a motion is filed, courts have a "continuing obligation to sua sponte raise the issue of subject matter jurisdiction if it is in question." *Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002). To survive a motion to dismiss for lack of subject matter jurisdiction, the party invoking federal jurisdiction bears the burden of proving that subject matter jurisdiction, in fact, exists. *See, e.g., Mortensen v. First Federal Savings & Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977) ("[T]he plaintiff [invoking federal jurisdiction] will have the burden of proof that jurisdiction does in fact exist.").

A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face" or "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Id.* When evaluating the merits of a facial attack, "the court must consider the allegations of the complaint as true." *Id.* By contrast, on a factual attack, courts "are not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide factual matters relating to jurisdiction." *Cestonaro*, 211 F.3d at 752 (3d Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(h)(3), a court must dismiss a complaint if it "determines . . . that it lacks subject matter jurisdiction."

### III. DISCUSSION

It is apparent to the Court that Engo's complaint must be dismissed because the Court lacks subject matter jurisdiction over Engo's claims, as these claims are committed to arbitration pursuant to Article XIII of the CBA.

Under the Federal Arbitration Act,

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising

8

out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist for the revocation of any contract.

9 U.S.C. § 2.

Accordingly, "if [a] collective bargaining agreement provide[s] for resolution of [a] dispute through arbitration, the court ha[s] *no jurisdiction* to address the merits." *Shaffer v. Mitchell Transport, Inc.*, 635 F.2d 261, 264 (3d Cir. 1980) (citations omitted) (emphasis added). Simply put, "the inclusion of a broad arbitration clause in a collective bargaining agreement gives rise to a presumption of arbitrability which may be rebutted only 'by the most forceful evidence of a purpose to exclude the claim from arbitration.'" *Rite Aid of Pennsylvania, Inc. v. UFCW, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010) (quoting *AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 650 (1986)).

In this case, there is no dispute that Engo's claims fall within the scope of the CBA's alternative dispute resolution provision. In fact, Engo tacitly concedes this point by acknowledging that it pursued its contractual remedies by "fil[ing] for arbitration with Wellington Davis, seeking the *same relief* that . . . [it] now seeks in this Court." (Def. Oppn. Br. at 13) (emphasis added). Nevertheless, Engo urges this Court to allow its claims to proceed on their merits notwithstanding the alternative dispute resolution provision in the CBA. Specifically, Engo asserts that "[a]rbitration by J.J. Pierson did not and will not resolve the issues presented to this Court by . . . [Engo's] complaint" because Arbitrator Pierson is not qualified to serve as an arbitrator. (*See* Def. Oppn. Br. at 14.)

In opposing Defendants' motion to dismiss, Engo goes to great lengths to persuade this Court that Arbitrator Pierson "demonstrated a manifest disregard for the contract and for his obligations as an arbitrator," and that his Award of January 23, 2012 was wrong as a matter of law. (*See* Def. Oppn. Br. at 15-22.) The issue before this Court is not, however, whether

9

Arbitrator Pierson is qualified to serve as an arbitrator; that issue is pending before the Appellate Division. Nor is it this Court's task to sit in judgment of Arbitrator Pierson's Award of January 23, 2012; Judge Francis already performed that task, and ruled in Engo's favor in vacating the Award.

Without specifically addressing why this case should proceed on its merits, Engo argues that "even if Pierson were otherwise qualified to serve, he would have no jurisdiction over [Engo]." (Def. Oppn. Br. at 23.) This argument misses the mark. At issue is whether Engo's claims are committed to arbitration, not which specific arbitrator has jurisdiction to resolve these claims.

With Judge Francis's vacatur of Arbitrator Pierson's Award, the posture of this case is—in practical terms—as if the arbitration before Arbitrator Pierson had never occurred. For this Court to exercise jurisdiction over Engo's claims before said claims are arbitrated would undermine the alternative dispute resolution process to which the parties agreed, and the "strong federal policy favoring" arbitration. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1115 (3d Cir. 1993). As Engo's claims are committed to arbitration pursuant to the CBA, this Court will dismiss Engo's complaint in its entirety for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is granted. Engo's complaint is dismissed in its entirety without prejudice to Engo's right to seek appropriate relief from this Court at such time as it can set forth an adequate basis of federal subject matter jurisdiction.

Dated: 21 of January, 2014.

                                                        _____
JOSE L. LINARES
U.S. DISTRICT JUDGE